ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAY -3 AM 10:31
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TAMMIE LYNN BRYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-037 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Tammie Lynn Bryan ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff applied for DIB and SSI on September 16, 2009, alleging a disability onset

---

[1]The Court takes judicial notice that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case.

date of September 1, 2008.[2] Tr. ("R."), pp. 129-39. The Social Security Administration denied Plaintiff's applications initially, R. 69-76, and on reconsideration, R. 82-88. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on August 12, 2011. R. 25-62. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Plaintiff's husband, Robert Bryan. See id. On August 26, 2011, the ALJ issued an unfavorable decision. R. 13-20.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: scoliosis and degenerative disc disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform the full range of sedentary work[3] as defined in 20 C.F.R.

---

[2]Although the ALJ and the Commissioner both refer to Plaintiff's application date as September 15, 2009, the application itself reflects that it was in fact filed on September 16, 2009. R. 129, 136.

[3]Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria

2

§§ 404.1567(a) and 416.967(a). The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.925).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Thus, the claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2008, through August 26, 2011 (the date of the ALJ's decision).

R. 15-20.

When the Appeals Council ("AC") denied Plaintiff's request for review on April 17, 2012, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Plaintiff's depression was not a severe impairment, and (2) the ALJ erred in failing to give great weight to the opinion of Plaintiff's treating psychiatrist. (See doc. no. 15 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 16 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

---

are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

3

Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

4

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ's Findings Regarding Plaintiff's Depression are Supported by Substantial Evidence

Plaintiff first argues that the ALJ erred in his determination at step two of the sequential process that Plaintiff's depression did not constitute a "severe" impairment. (Pl.'s Br., pp. 9-10.) To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) and 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

5

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c) and 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at

1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Title 20, Code of Federal Regulations, Sections 404.1520a and 416.920a set forth a "special technique" to be followed in the analysis of mental impairments. The ALJ must first evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Next, the ALJ must rate the degree of functional limitation resulting from the mental impairment by considering four functional categories and rating the degree of functional limitation in each category.[4] Id. §§ 404.1520a(c), 416.920a(c). Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[5] Id. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate," "marked," or "extreme." In rating the decompensation category, the ALJ classifies the limitation as "none," "one or two," "three," and "four or more." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id.

---

[4]These four functional categories are known as the "paragraph B" criteria. R. 17.

[5]"*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

7

After rating the degree of functional limitation stemming from a mental impairment, the ALJ must then determine whether that impairment is severe. Id. §§ 404.1520a(d), 416.920a(d). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1). Only if the ALJ finds that the mental impairment is severe will he then be required to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). With these basic principles in mind, the Court turns to Plaintiff's argument.

In his decision, the ALJ acknowledged Plaintiff's "medically determinable mental impairment of depression" but found that it did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. R. 16. In making that finding, the ALJ addressed each of the four functional categories for evaluating mental disorders described above. Id. As to the first three categories – activities of daily living; social functioning; and concentration, persistence, or pace – the ALJ found that Plaintiff exhibited no more than mild limitations. Id. As the fourth category, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. Id. In support of his analysis of those categories, the ALJ extensively discussed the medical evaluations of Manuel P. Lucero, M.D., Plaintiff's treating psychiatrist. Id. Specifically, the ALJ noted that, upon conducting Plaintiff's initial intake in July of 2010, Dr. Lucero noted that Plaintiff "complained of depression but was in no emotional distress" and that she "denied any

hallucinations and was cooperative and friendly with a good sense of humor." R. 16, 481. The ALJ additionally noted Dr. Lucero's finding that, except for Plaintiff's difficulty with immediate recall, her objective tests were within normal limits, and she did not relate any symptoms that would cause moderate difficulties in functioning with others in the workplace. Id.; see also 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

As to Dr. Lucero's later finding on July 14, 2011, that Plaintiff was "markedly limited" in her "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances," the ALJ clearly explained that he accorded no weight to that finding, given that it was in direct contravention of Dr. Lucero's own records as well as the findings of two state agency psychological consultants.[6] R. 16, 413-26, 430-43, 484-87. Notably, an ALJ is entitled to discount a treating physician's report where that report is inconsistent with the physician's own treatment notes and unsupported by the medical evidence. Crawford v. Comm'r of Soc. Sec., 363 F. 3d 1155, 1158-59 (11th Cir. 2004). Here, the ALJ noted that nothing in Dr. Lucero's July 14th evaluation supported a finding of marked limitation "to any degree" and, moreover, Dr. Lucero's treatment and office notes reported that Plaintiff was stable on her medications, "doing fine," and cooperative, friendly, and respectful, with a good sense of humor. R. 16, 469, 484-87. Accordingly, the ALJ clearly expressed his decision to afford no weight to Dr. Lucero's opinion and his agreement instead with the opinions of Allen Carter, Ph.D, and Arleen Turzo, Ph.D, each of whom examined the medical evidence concerning Plaintiff's mental

---

[6]The ALJ's decision to accord no weight to Dr. Lucero's opinion directly bears on Plaintiff's argument that the ALJ erred in failing to afford "great weight" to that opinion, as explained in more detail infra Part III.B.

9

condition in a consultative capacity and found her depression to be a non-severe impairment.[7] R. 16, 413-26, 430-43.

Plaintiff's additional arguments as to how the ALJ supposedly erred in finding her depression to be non-severe are unavailing. First, Plaintiff argues that the ALJ's finding was error due to his implication that Plaintiff's depression was "not an issue until [Plaintiff] went to the Community Mental Health Center in July of 2010," even though Plaintiff had been receiving medication for depression from her primary care physician since 2007. (Pl.'s Br., pp. 11-12.) However, as correctly noted by the Commissioner, Plaintiff's interpretation of the ALJ's opinion concerning the significance of Plaintiff's July 2010 visit to the mental health center mis-characterizes that opinion. The ALJ neither directly stated nor implied that Plaintiff's depression was "not an issue" until Plaintiff visited the mental health center, but instead simply noted that "[t]he medical evidence of Record shows that the claimant did not go to mental health until July 2010." R. 16. As also noted by the Commissioner, whether a claimant is receiving mental health treatment from a mental health provider – rather than simply receiving prescriptions from a primary care physician – is a reasonable consideration in determining the severity or non-severity of that claimant's mental impairment. Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 269 (11th Cir. 2011).

Next, Plaintiff's argument that it was error for the ALJ to credit the reports of Dr. Carter and Dr. Turzo because, unlike Dr. Lucero, those consulting physicians were not "in a position to know what [Plaintiff's] limitations [were]," is equally unavailing. (Pl.'s Br.,

---

[7]The weight accorded to the opinions of Dr. Carter and Dr. Turzo by the ALJ is discussed in more detail infra.

p. 12.) As explained above, the ALJ accorded no weight to Dr. Lucero's opinion concerning Plaintiff's "marked" mental limitations. R. 16. That being the case, it was not error for the ALJ to "[credit] the reports of non-examining, non-treating physicians." Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (noting that the ALJ's consideration of the reports of non-examining, non-treating physicians was not improper where good cause was shown for not according substantial weight to the opinion of the treating physician). Thus, given the ALJ's extensive discussion of his reasons for discounting Dr. Lucero's opinion, his decision to alternatively rely on and agree with the reports of Dr. Carter and Dr. Turzo does not constitute error.

Finally, Plaintiff's argument that the ALJ erred in failing to afford more weight to Plaintiff's husband's testimony fails as well. (Pl.'s Br., p. 12.) The ALJ explained that Mr. Bryan's testimony concerning Plaintiff's "frequent, violent mood swings" was not supported by the medical record, that Plaintiff never related such symptoms to Dr. Lucero, and that, due to Mr. Bryan's personal relationship with Plaintiff, his supportive opinion was fully expected. R. 16, 19. Accordingly, the ALJ assigned "little weight" to his testimony. R. 19. Notably, Plaintiff points to no authority supporting the proposition that Mr. Bryan's testimony was due any additional weight, especially in consideration of the Eleventh Circuit's holding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted). Thus, the

ALJ's decision to assign little weight to Mr. Bryan's testimony was not error.[8]

In sum, it is clear from the ALJ's opinion that he methodically addressed Plaintiff's depression in light of the four functional categories for evaluating mental disorders in addition to the relevant medical records. R. 16-18. The Court is mindful that Plaintiff's burden to show the severity of a particular impairment is not a heavy one. See McDaniel, 800 F.2d at 1031. Here, however, the ALJ's determination that Plaintiff failed to meet that burden as to the impairment at issue is supported by substantial evidence. Accordingly, the Court finds that this issue provides no basis for remand or reversal.

### B. The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff's second argument, which is closely linked to her first argument and therefore warrants only a brief discussion, is that the ALJ erred in failing to accord great weight to the opinion of Dr. Lucero, Plaintiff's treating psychiatrist. (Pl.'s Br., pp. 12-14.) The extent of Plaintiff's argument on the matter is essentially that Dr. Lucero is the only treating psychiatrist that has examined Plaintiff and that, accordingly, he is the "only

---

[8]To the extent that Plaintiff argues that the ALJ failed to give her own testimony sufficient weight – which is unclear from her brief (see Pl.'s Br., p. 12) – the ALJ's discussion of the paragraph B criteria and the relevant medical record speaks directly to that argument. While Plaintiff alleges in a conclusory manner that she "crossed the threshold of severity as supported by her testimony," the ALJ clearly explained his reliance and non-reliance on various medical records in arriving at his conclusion that Plaintiff's depression was non-severe. R. 16-17. The ALJ also specifically noted that he found Plaintiff's allegations regarding mental impairments to be "not fully credible and non-severe in nature," R. 19. Notably, when discrediting subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." See Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Here, as noted, the ALJ articulated a number of explicit and adequate reasons for not relying on Plaintiff's testimony. R. 16-18.

qualified medical professional who has the basis to form an opinion regarding [Plaintiff's] depression." (Id. at 14.) The Commissioner argues that the ALJ articulated good cause for according no weight to Dr. Lucero's opinion based on his finding that the opinion was unsupported and inconsistent with the medical evidence and other evidence in the record. (Comm'r's Br., p. 13.)

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, as discussed at length above and as correctly pointed out by the Commissioner, the ALJ observed that, although Dr. Lucero found that Plaintiff had marked limitations in her

ability to adhere to competitive attendance standards, "there is nothing in [Dr. Lucero's] notes that supports that restriction to any degree." R. 16. In Dr. Lucero's July 14, 2011 "Medical Source Statement," which simply consists of a series of descriptions of mental abilities next to four boxes to be checked indicating the claimant's aptitude for those abilities, Dr. Lucero checked "markedly limited" next to "The ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." R. 485. Notably, as discussed by the ALJ, Dr. Lucero does not provide any supplementary information in that evaluation that might explain his finding of marked limitations, and the finding itself is belied by Dr. Lucero's own notes in the various other evaluations of Plaintiff that he conducted, wherein he generally asserts that Plaintiff exhibits a good sense of humor, is able to exchange pleasantries, is cooperative, friendly, and respectful, and is stable on her medications. See generally R. 468-83. Moreover, the ALJ noted that, although Dr. Lucero assigned Plaintiff a Global Assessment of Functioning score of 52 in his July 13, 2011 office notes, indicating moderate difficulties, Dr. Lucero's observations of Plaintiff in those same notes in fact support only mild restrictions. R. 16, 469. In short, the ALJ found that Dr. Lucero's findings that Plaintiff exhibited marked or moderate limitations were directly contradicted by his own medical reports, which repeatedly described Plaintiff as cooperative and friendly and which did not indicate that Plaintiff was subject to any limitations. R. 469, 471, 473, 475, 477, 479.

The ALJ additionally found that Dr. Lucero's findings concerning Plaintiff's limitations were unsupported by the other medical evidence in the record, in particular the medical opinions of Dr. Carter and Dr. Turzo. R. 16, 413-26, 430-43. Dr. Carter noted in

14

his report that Plaintiff's depression was non-severe and that she had "no significant restrictions in function" related to that depression. R. 413, 425. Likewise, Dr. Turzo noted in his report that Plaintiff's depression was non-severe, that she had no limitations due to her psychological condition, and that her mood was normal and positive. R. 430, 442. In short, given the ALJ's findings concerning Dr. Lucero's own reports as well as those of other physicians, the ALJ clearly articulated good cause for his decision to accord no weight to Dr. Lucero's opinion concerning Plaintiff's depression.[9] Sryock, 764 F.2d at 835; Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84.

Finally, Plaintiff's argument as to the supposed interplay between Dr. Lucero's opinion and Plaintiff's husband's testimony is unavailing. (Pl.'s Br., p. 14.) Plaintiff appears to assert that the ALJ erred by finding that Mr. Bryan's testimony was not supported by Dr. Lucero's medical opinion, but she does not elaborate on the actual nature of that error nor its supposed effect on the ALJ's opinion. (Id.) In fact, the Court finds the ALJ's opinion to be quite clear on the matter: the ALJ noted that Mr. Bryan's testimony that Plaintiff was prone to frequent, violent mood swings was not supported by Dr. Lucero's records, that Plaintiff at no time ever reported such symptoms to Dr. Lucero, that Mr. Bryan's supportive

---

[9]Notably, Plaintiff's implication that Dr. Carter's and Dr. Turzo's reports are somehow invalid based on his argument that "Dr. Lucero is the only qualified medical professional who has the basis to form an opinion regarding [Plaintiff's] depression" is unpersuasive, not to mention simply incorrect. (Pl.'s Br., p. 14.) As explained supra, an ALJ is entitled to rely on the findings of non-examining, non-treating physicians where he has shown good cause for discrediting the opinion of the claimant's treating physician. Jones, 810 F.2d at 1005. Moreover, while it is true that an examining source is generally entitled to more weight to a non-examining source, the relevant regulations do not establish that *only* an examining source is "qualified" to form an opinion concerning a matter, as Plaintiff appears to argue. See 20 C.F.R. § 404.1527(c).

opinion was "fully expected" given his personal relationship with Plaintiff, and that the ALJ was thus according "little weight" to Mr. Bryan's testimony. R. 16, 19. Put simply, the ALJ accorded little weight to Mr. Bryan's testimony because, not only did the ALJ fully expect Mr. Bryan to support his wife's claim, but Mr. Bryan's testimony was entirely unsupported by the medical record. Plaintiff's argument that the ALJ should have assigned more weight to Mr. Bryan's testimony is unpersuasive and, moreover, appears to be nothing more than a simple variation on her argument in the previous section of her brief concerning that same testimony's relation to the ALJ's finding on severity. (See Pl.'s Br., p. 12.)

In sum, the Court finds that the ALJ's finding at step two of the sequential process that Plaintiff's depression constituted a non-severe impairment was supported by substantial evidence. McDaniel, 800 F.2d at 1031. Additionally, the ALJ showed good cause for his decision to accord no weight to Dr. Lucero's opinion concerning the severity of Plaintiff's depression. Sryock, 764 F.2d at 835; Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3rd day of May, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE